# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUNIL SADASIVAN,<br><br>   Plaintiff,<br><br>   v.<br><br>ALISSA EMMEL, et al.,<br><br>   Defendants. | Case No. 1:23-cv-00019-SAB<br><br>ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER, DENYING DEFENDANTS' MOTION TO DISMISS, AND DENYING ALTERNATIVE MOTION TO TRANSFER AS MOOT<br><br>ORDER TRANSFERRING ACTION TO THE DISTRICT OF COLUMBIA<br><br>ORDER VACATING JUNE 28, 2023 HEARING<br><br>(ECF Nos. 9, 19, 22) |

**I.**

**INTRODUCTION**

Currently before the Court is Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3), or transfer the case to the United States District Court for the District of Columbia under 28 U.S.C. § 1406(a). (ECF No. 9.) Defendant alternatively moves to transfer this case under 28 U.S.C. § 1404(a). The Court finds this matter suitable for decision without oral argument. See Local Rule 230(g). Based on the moving, opposition, and reply papers, the declarations and exhibits attached thereto, as well as the Court's record, the Court issues the following order granting Defendants' motion to transfer this action to the United States District

1  Court for the District of Columbia, denying Defendant's motion to dismiss pursuant to Federal
2  Rule of Civil Procedure 12(b)(3), and denying Defendant alternative motion to transfer the case
3  under 28 U.S.C. § 1404(a).

## II.

## BACKGROUND

### A. Procedural Background

On January 3, 2023, Plaintiff Sunil Sadasivan filed this action against Defendants (1) Alissa Emmel, Chief, United States Citizenship and Immigration Services ("USCIS"), Immigrant Investor Program Office ("IPO"); (2) Alejandro Mayorkas, Secretary, Department of Homeland Security ("DHS"); (3) Merrick Garland, Attorney General; and (4) Ur Mendoza Jaddou, Director, USCIS. (Compl., ECF No. 1)

On March 7, 2023, Defendant filed the motion to dismiss or transfer that is the subject of this order. (Def.'s Mot. Dismiss, or Transfer ("Mot."), ECF No. 9.) On March 20, 2023, pursuant to the parties' written consent to Magistrate Judge jurisdiction, this order was assigned to Magistrate Judge Stanley A. Boone for all purposes. (ECF No. 16.) Following an extension of the briefing schedule, on May 19, 2023, Plaintiff filed an opposition to the motion. (Pl.'s Opp'n Mot. ("Opp'n"), ECF No. 19.) Pursuant to the parties' request, the Court continued the hearing on the motion to June 28, 2023 at 10:00 a.m. in Courtroom 9. (ECF No. 21.) On May 23, 2023, Defendant filed a reply brief. (Def.'s Reply Supp. Def.'s Mot. ("Reply"), ECF No. 20.)

### B. Relevant Factual Background and Causes of Action

Plaintiff was born in and currently resides in India. (See Mot. 5; Compl. ¶ 31, Exs. A-B, ECF No. 1-2 at 2-6); Decl. Alissa Emmel ("Emmel Decl.") ¶ 5.) Plaintiff filed a form I-526 petition through the EB-5 program with USCIS on November 19, 2019, by mailing it to USCIS's Dallas Lockbox. (Compl. ¶ 27, Exs. A, B; Emmel Decl. ¶ 5.) Plaintiff based his petition on his $500,000 investment in a project located in Merced, California. (Compl. ¶ 22.) Plaintiff's petition was forwarded from USCIS's Dallas Lockbox in Texas to the IPO in Washington, D.C., which received it on December 2, 2019. (Emmel Decl. ¶ 5.) The next day, December 3, 2019,

1  USCIS issued a receipt notice to Plaintiff. (Compl. ¶ 28, Ex. A; Emmel Decl. ¶ 5.) Plaintiff's
2  petition remains pending at the IPO in Washington, D.C. since that time. (Emmel Decl. ¶ 5; see
3  also Compl. ¶ 29 ("Plaintiff's I-526 petition has now been pending for over thirty-seven (37)
4  months").)

5      Plaintiff's first cause of action is for violation of 5 U.S.C. § 555(b). (Compl. ¶¶ 35-45.)
6  Specifically, Plaintiff states that "Plaintiff challenges only the reasonableness of Defendants'
7  delays or inaction in the completion of his background checks and adjudication of his I-526
8  petition, not the grant or denial of this filing." (Compl. ¶ 42.)

9      Plaintiff's second cause of action is for mandamus to compel officers of DHS, USCIS, or
10 the Department of Justice, to perform their duties. (Compl. ¶¶ 46-54.) Again, "Plaintiff
11 challenges only the reasonableness of the delays or inaction in the completion of his background
12 checks and adjudication of his I-526 petition, not the grant or denial of this filing." (Compl. ¶
13 51.)

14     **C.**    **The EB-5 Program**

15     The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, authorizes the
16 issuance of visas to different categories of immigrants, including a fifth preference category
17 ("EB-5") visa for immigrants who contribute to "employment creation" by investing in new
18 commercial enterprises that create full-time jobs. See Immigration Act of 1990, Pub. L. No.
19 101-649, § 121(a), 104 Stat. 4978, 4989 (Nov. 29, 1990) (codified at 8 U.S.C. § 1153(b)(5)); 8
20 C.F.R. § 204.6 (2020) (defining the requirements and process for EB-5 "alien entrepreneur"
21 classification); Mokkapati v. Mayorkas, No. 21-CV-1195 (BAH), 2022 WL 2817840, at *1
22 (D.D.C. July 19, 2022); Kale v. Mayorkas, No. CV 21-08095 (FLW), 2021 WL 2652124, at *1
23 (D.N.J. June 28, 2021). "An I-526 petition is 'the mechanism by which individuals who are
24 eligible to immigrate to the United States through the [EB-5 category] obtain recognition from
25 the government that they have satisfied the investment and job-creation requirements of that
26 visa-preference category.' " Mokkapati, 2022 WL 2817840, at *1 (quoting Bromfman v. U.S.
27 Citizenship and Immigr. Servs., No. 20-cv-571 (BAH), WL 5014436, at *1 (D.D.C. Oct. 28,
28 2021)). To qualify for an EB-5 visa, the immigrant must "first file an I-526 petition with USCIS

1 and 'create full-time employment for not fewer than 10 United States citizens or aliens lawfully admitted for permanent residency or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters).' " Mokkapati, 2022 WL 2817840, at *1 (quoting 8 U.S.C. § 1153(b)(5)(A)(ii)). "In furtherance of that jobs-creation objective, the immigrant must have made or be in the process of making an investment of at least $1,000,000 generally or at least $500,000 into a 'targeted employment area.' " Id. (quoting 8 U.S.C. § 1153(b)(5)(C)(ii)).

"An approved visa petition is merely a preliminary step in the visa application process." Tongatapu Woodcraft Haw., Ltd. v. Feldman, 736 F.2d 1305, 1308 (9th Cir.1984). "It does not guarantee that a visa will be issued, nor does it grant the alien any right to remain in the United States." Id.

The IPO is the component of USCIS responsible for adjudicating Form I-526 petitions. (See Emmel Decl. ¶¶ 1, 3.)  The IPO is located in Washington, D.C. (Emmel Decl. ¶ 2.)  All evaluation and decisions regarding Form I-526 petitions are made in Washington, D.C. (Emmel Decl. ¶¶ 3, 6, 8.)  All adjudicative actions on Form I-526 petitions, such as approvals, denials, Requests for Evidence, and Notices of Intent to Deny, are issued in Washington, D.C. (Emmel Decl. ¶ 6.)  The IPO employees responsible for managing the EB-5 program, and specifically Form I-526 petitions, are based in Washington, D.C. (Emmel Decl. ¶ 8.)  USCIS's Form I-526 inventory management system is administered by the IPO in Washington, DC. (Emmel Decl. ¶ 9.)  USCIS's Form I-526 petition inventory is pending with the IPO in Washington, D.C. (Id.)

**III.**

**LEGAL STANDARD**

A party may move to dismiss an action based on improper venue pursuant to Rule 12(b)(3). Fed. R. Civ. P. 12(b)(3).  Once a defendant challenges venue, the plaintiff bears the burden of demonstrating that the chosen venue is proper. See Piedmont Label Co. v. Sun Garden Packing Co., 598 F.2d 491, 496 (9th Cir. 1979).  In determining whether venue is proper, the pleadings need not be accepted as true and the court may consider facts outside of the pleadings. Doe 1 v. AOL, LLC, 552 F.3d 1077, 1081 (9th Cir. 2009); see also Batra v. United States

Citizenship & Immigr. Servs., No. 2:21-CV-02489-SB-AFM, 2021 WL 4353112, at *2 (C.D. Cal. Aug. 2, 2021) (citing Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004)). Nonetheless, the court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in the non-moving party's favor. Id.

"A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1)(A)-(C); see also Adab v. United States Citizenship & Immigr. Servs., No. 214CV04597CASAGRX, 2015 WL 6249563, at *2 (C.D. Cal. Feb. 9, 2015) ("Because plaintiffs have sued officers of the United States, the propriety of venue for the purposes of 28 U.S.C. § 1406 is governed by 28 U.S.C. § 1391(e).").

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "A determination of improper venue does not go to the merits of the case and therefore [dismissal] must be without prejudice." In re Hall, Bayoutree Assocs., Ltd., 939 F.2d 802, 804 (9th Cir. 1991).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

**IV.**

**DISCUSSION**

Defendants argue this case should be dismissed under Federal Rule of Civil Procedure 12(b)(3) or transferred to the United States District Court for the District of Columbia under 28 U.S.C. § 1406(a) because venue is improper under 28 U.S.C. § 1391(e)(1)(B). Alternatively, Defendants argue the case should be transferred pursuant to 28 U.S.C. § 1404(a).

**A.     The Court Finds Venue Improper under 28 U.S.C. § 1391(e)(1)(B) in the Eastern District of California Given Plaintiff's Complaint Alleges only Delay in Processing the Petition**

The parties agree the relevant in inquiry is under 28 U.S.C. § 1391(e)(1)(B), and not 1391(e)(1)(A) and (C).  (See Mot. 6; Opp'n 2-5.)  Therefore, under § 1391(e)(1)(B), Plaintiff bears the burden of establishing that a substantial part of the events or omissions giving rise to his claims occurred in the Eastern District of California.  As Plaintiff emphasizes, this "does not require that a majority of the events have occurred in the district where suit is filed, nor does it require that the events in that district predominate."  Vigg v. Jaddou, No. 21-CV-02678-KAW, 2022 WL 3581930, at *2 (N.D. Cal. Aug. 10, 2022) (quoting Rodriguez v. Cal. Highway Patrol, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000)).  "Rather, it is sufficient that a substantial part of the events occurred in the challenged venue, even if a greater part of the events occurred elsewhere."  Id. (quoting Blend, LLC v. Glenwood Smoked Prods., No. 19-cv-03834-DMR, 2020 WL 109254 at *6 (N.D. Cal. Jan. 9, 2020)).

Defendants argue this "means, for venue to be proper, *significant* events or omissions material to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere," and "[o]nly the events that directly give rise to a claim are relevant."  Lawler v. Tarallo, No. C 13-03284 MEJ, 2013 WL 5755685, at *3 (N.D. Cal. Oct. 23, 2013) (emphasis in original) (first quoting Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir.2005), then quoting Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (3rd Cir. 2003))).  Defendants additionally argue that "in determining whether events or omissions are sufficiently substantial to support venue under § 1391(a)(2), the court should generally focus on activities of the defendant and not the activities of plaintiff."  Lawler, 2013 WL 5755685, at *3 (citing Kelly v. Qualitest Pharm., Inc., 2006 WL 2536627, at *8 (E.D. Cal. Aug. 31, 2006)).[1]

Defendants contend Plaintiff fails to establish venue because Plaintiff alleges that the

---

[1] Defendant proffers that 28 U.S.C. § 1391(e)(1)(B) is the analogue of § 1391(a)(2) for cases where the United States or a U.S. officer or employee is a defendant, and both provisions feature identical wording.  (Mot. 7 n.1.)  This is currently incorrect.  To be clear, subsection (a) was amended in 2011, and no longer contains that language.  See Enacted Legislation Pub.L. 112-63, Title II, § 202 , Dec. 7, 2011, 125 Stat. 763.  The language is now contained in subsection (b), stating: "A civil action may be brought in . . . **(2)** a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."  28 U.S.C. § 1391(b)(2).

1    events or omissions that give rise to his claims are the IPO's alleged delay in evaluating his
2    petition; none of the alleged events or omission pertaining to his claim occurred in the Eastern
3    District; Plaintiff submitted his petition in Texas, which was then transferred to the IPO, which is
4    in the District of Columbia; the petition is being evaluated and will be decided by the IPO in the
5    District of Columbia; and to the extent that the petition allegedly is being delayed, it is being
6    delayed in the District of Columbia.  Defendants view the only allegation even tangentially
7    related to the Eastern District is that Plaintiff invested in a project located in Merced, California,
8    but argues this is insufficient.

9        Defendants rely on three principal cases in their motion, and an additional fourth case
10   provided in reply.  Defendants proffer these courts have concluded that venue outside the District
11   of Columbia was improper over this type of unreasonable delay challenge to the IPO's
12   processing of an EB-5 petition.  See Batra v. United States Citizenship & Immigr. Servs., No.
13   2:21-CV-02489-SB-AFM, 2021 WL 4353112 (C.D. Cal. Aug. 2, 2021); Vigg, 2022 WL
14   3581930; Fang v. Blinken, No. 2:21-CV-02752-RGK-JC, 2021 WL 4900372 (C.D. Cal. June 22,
15   2021); Kantharia v. USCIS, _ F. Supp. 3d _, No. 2:23-CV-01120-MCS-KK, 2023 WL 3444070
16   (C.D. Cal. May 12, 2023).

17       Plaintiff responds that there is no dispute that Plaintiff's EB-5 investment is located in
18   Merced, California, within the Eastern District of California and, as such, venue is proper under
19   28 U.S.C. §1391(e)(1)(B).  As for the named Defendants, Plaintiff states that "despite their
20   claims to the contrary," Defendants in this matter are split between the District of Columbia
21   (Alissa Emmel, Alejandro Mayorkas, and Merrick Garland) and the District of Maryland (Ur
22   Mendoza Jaddou."  (Opp'n 4.)  Plaintiff also emphasizes that the U.S. Citizenship and
23   Immigration Services headquarters relocated from Washington, DC, to Camp
24   Springs, Maryland.  See https://www.gsa.gov/about-us/regions/region-11-national-capital/gsa-
25   celebrates-cis-groundbreaking (last accessed June 22, 2023).

26       Based on this, Plaintiff submits that it is beyond argument that Plaintiff could not have
27   filed his EB-5 I-526 petition with USCIS without first making a qualifying investment through
28   the EB-5 program; that Plaintiff's EB-5 I-526 petition is a multi-step process, as explained in

7

1 Defendants' motion; that Plaintiff's investment in Merced, California, is integral to his EB-5 I-
2 526 petition and that the petition cannot be approved without a qualifying investment.
3 Furthermore, Plaintiff highlights USCIS may issue a Request for Evidence ("RFE") asking for
4 proof of the number of jobs created and the type of investment made in Merced, California.
5 Therefore, Plaintiffs contend that for Defendants to argue that the investment in Merced,
6 California, is of no importance to the adjudication of Plaintiff's EB-5 I-526 petition is misplaced
7 and inaccurate.

8   The Court turns to the cases that have adjudicated similar motions to change venue
9 pertaining to EB-5 petitions.  In opposition, Plaintiff argues that Batra is distinguishable.
10 Plaintiff is correct that significantly, the EB-5 investment was made in Imperial County, located
11 within the Southern District of California, not in the Central District of California where the case
12 was brought.  Thus, the analysis pertaining to investment is not directly on point to the facts here,
13 given Plaintiff's investment *is* located within the Eastern District of California.  However, the
14 analysis pertaining to the omission being the delay is more important given Plaintiff's complaint
15 here.

16   Specifically, the Batra court first found that "[t]he main event 'giving rise' to Plaintiff's
17 claim is Defendants' delay in adjudicating his EB-5 petition . . . [as] Plaintiff filed his application
18 on November 15, 2019 . . . [the] application arrived at the . . . (IPO) in Washington DC on
19 December 3, 2019 . . . [the] petition has and will remain at the IPO until it is adjudicated [and]
20 [t]herefore, the source of the delay in processing Plaintiff's application is the IPO in Washington,
21 D.C. and under 28 U.S.C. § 1391(e)(1)(B), venue is proper in the District of Columbia." Batra,
22 2021 WL 4353112, at *3.  The court then rejected the plaintiff's argument that the location
23 where the application was submitted in part supported a finding that a substantial part of the
24 events giving rise to the claim occurred in the district.  See id. ("First, Plaintiff claims venue is
25 proper in this Court because 'his Form I-526 was prepared and sent to the Agency from this
26 district[,]' . . . [b]ut the Court finds instructive [Ramirez] . . . where the court indicated that, for
27 venue purposes, where an application is adjudicated is more important than where an application
28 is submitted." (citing Ramirez de Ochoa v. United States Citizenship & Immigr. Servs., No. 05-

1  CV-2068 BTM (JMA), 2006 WL 8455355, at *2-3 (S.D. Cal. Aug. 11, 2006))); see also Vigg,
2  2022 WL 3581930, at *3 (adopting same rationale and further noting that "[i]n any case, even if
3  the Court was to find that actions by the California Service Center was a 'substantial part of the
4  events or omissions giving rise to the claim,' the California Service Center is located in the
5  Central District of California (specifically, Laguna Niguel, Orange County) [and] . . . venue
6  would still not be proper in this district.").

7  Next, the Batra court considered the plaintiff's argument "that venue is appropriate in this
8  District because 'the economic and social impact of [Plaintiff's] investment can be felt within
9  this district—particularly within the blighted Riverside County communities of the Eastern
10 Coachella Valley.' " Batra, 2021 WL 4353112, at *3.  However, the Batra court observed "that
11 the Regional Center in which Plaintiff invests is located in Imperial County, which is within the
12 jurisdiction of the Southern District of California, not the Central District of California." Id.
13 Given that, the court concluded that "[w]hile Plaintiff's investment may have ripple effects in
14 neighboring counties, such as Riverside County, the existence of such effects is speculative and
15 this argument is too tenuous to justify venue," and therefore "[o]n balance, a substantial part of
16 the events giving rise to Plaintiff's action did not occur in the Central District of California." Id.

17 Therefore, the Court agrees with Plaintiff in part, that the reliance on Batra is therefore
18 not fully analogous to the facts at hand.  Nonetheless, the conclusion pertaining to the omission
19 being the delay is more important given Plaintiff's complaint here, as the Court holds herein.
20 Batra, 2021 WL 4353112, at *3 ("[t]he main event 'giving rise' to Plaintiff's claim is
21 Defendants' delay in adjudicating his EB-5 petition . . . [as] Plaintiff filed his application on
22 November 15, 2019 . . . [the] application arrived at the . . . (IPO) in Washington DC on
23 December 3, 2019 . . . [the] petition has and will remain at the IPO until it is adjudicated [and]
24 [t]herefore, the source of the delay in processing Plaintiff's application is the IPO in Washington,
25 D.C. and under 28 U.S.C. § 1391(e)(1)(B), venue is proper in the District of Columbia.").

26 Defendants cite to Vigg.  Plaintiffs are correct that in that court's analysis, the court noted
27 "[i]t is unclear where the money is actually being held, given that the Regional Centers that
28 Plaintiffs invested in do not appear to be California companies even if they may finance projects

1  in California." Vigg, 2022 WL 3581930, at *3 n.2.  However, that was only a tangential
2  observation to a secondary analysis concerning the investment, and thus the Court does not agree
3  with Plaintiff that comparison to Vigg is therefore misplaced.  Specifically, the Vigg court first
4  found that the main event giving rise to the plaintiffs' claim was the alleged delay in adjudicating
5  the petition, and that the claims do not arise out of the investments, nor do the investments
6  involve any activity by the defendants.  Vigg, 2022 WL 3581930, at *3 ("Plaintiffs rely on their
7  investments in Regional Centers that finance or may finance EB-5 qualifying projects in this
8  district, but the location of these investments are not events giving rise to the claims in this
9  litigation . . . Plaintiffs do not raise claims arising out of these investments, nor do they involve
10 any activity by Defendants[,] [r]ather, the main event giving rise to Plaintiffs' claim is
11 Defendants' alleged delay in adjudicating their Form I-526s [and] [t]he Form I-526s were each
12 submitted in Texas and then ultimately transferred to Washington, D.C. to be adjudicated.").
13 The Court notes that the Vigg court did cite to Batra for the "main event" finding, but did not
14 note that in Batra the investment was in fact in a county not located in the Central District.  See
15 2022 WL 3581930, at *3 (citing Batra, 2021 WL 4353112, at *3).  However, the Vigg court's
16 primary finding was that the "alleged failure to timely adjudicate Plaintiffs' petitions did not
17 occur in this district."  2022 WL 3581930, at *3.

18 　　　　The Vigg court then made an additional finding concerning the argument that certain
19 plaintiffs would suffer harm in this district because their investments are located in this district,
20 and that they would not have their investment funds returned to them until the petitions are
21 adjudicated.  There, the Vigg court rejected the argument as plaintiffs "suffer the harm where
22 they reside, not where their money may currently be located or spent," and that is where the
23 court made the observation concerning the lack of clarity as to where the money is actually being
24 held.  2022 WL 3581930, at *3.

25 　　　　The third case cited in Defendants' motion was not specifically addressed by Plaintiff in
26 opposition.  While the Fang court did find in favor of the Defendants to transfer venue to the
27 District of Columbia, the parties' arguments and the court's analysis did not touch upon the
28 location of the investments at issue.  Rather, the court, without much discussion found the

1  plaintiffs had failed to demonstrate any of the three avenues for establishing venue in the Central
2  District of California.  See Fang, 2021 WL 4900372, at *2 ("None of these provisions appl . . .
3  [f]irst, no Defendants reside in the Central District of California—the United States Secretary of
4  State and the United States Attorney General reside in Washington D.C . . . [s]econd, Plaintiffs
5  have identified no events or omissions that occurred in this district [and] [l]astly, Plaintiffs have
6  not shown that any of them reside here.").  Therefore, the case is of limited value to analyzing
7  the arguments presented here.

8       In reply, Defendants proffer that since the filing of the motion, a fourth court has also
9  held that the location of a plaintiff's investment venture is not a substantial part of the events or
10 omissions giving rise to a lawsuit over the IPO's adjudication of an EB-5 investor petition.  See
11 Kantharia, 2023 WL 3444070.  In the case, like here, the defendants were USCIS officials faced
12 with a lawsuit over the IPO's adjudication of plaintiffs' EB-5 investor petition,[2] and the only tie
13 to the district was the fact that the plaintiffs' investment ventures were located there.  Id. at *1-2.
14 The Kantharia defendants "argue[d] that the location of the property and enterprise in which
15 Plaintiffs invested is immaterial to the venue analysis because the *operative facts* of their
16 Complaint concern[ed] USCIS's adjudication—which occurred entirely within the District of
17 Columbia."  Id. (emphasis in original) (internal quotation marks omitted).  The court found the
18 plaintiffs had "offer[ed] no on-point authorities departing from the well-reasoned line of
19 decisions rejecting arguments like theirs."  Id. at *2 (citing Vigg, 2022 WL 3581930 at *3; Batra,
20 2021 WL 4353112 at *3).  The Kantharia court found that "venue does not lie in this district
21 merely because the business enterprises supporting Plaintiff's visa petitions are tied to this
22 district."  Id.  Instead, the court reiterated that "[t]he operative facts pertinent to Plaintiffs' claims
23 are those surrounding the adjudication of their [EB-5] petitions—not the investments

---

[2] The lawsuit in Kantharia concerned the IPO's denial of Plaintiffs' EB-5 petition, rather than a claim of unreasonable delay, but the court dismissed this distinction as "immaterial."  Kantharia, 2023 WL 3444070, at *2 n.1 ("The Court distills from these cases the proposition that the venue inquiry under § 1391(e)(1)(B) should turn on the location of agency action or inaction in a case challenging agency action or inaction.  On this ground, the Court rejects as immaterial the distinction Plaintiffs draw.").  Given the complaint allegations here only involve the delay, and have not reached the merits nor allegation that the application was denied for a reason tied to evidence relating to the investment, the Court finds as explained herein that there is even less of a connection to the investment than in Kantharia.

themselves." Id. Accordingly, the court concluded that venue was improper in a California judicial district with no ties to the case except being where Plaintiff's investment venture was located. Id.

In consideration of the parties' arguments and the relevant but limited universe of case law adjudicating the precise issues presented here, the Court ultimately finds in favor of Defendants and holds venue is improper in the Eastern District of California. However, the Court does find Plaintiff's arguments concerning the investment in Merced have some merit, however the merit is more general, or rather more potentially applicable in a different case not before the Court, and does not change the analysis given the actual complaint here. Plaintiff did highlight some aspects of the above cases that were not insignificant distinguishable facts and observations by those courts. However, the primary holdings and legal principles underpinning those decisions, support Defendants here. Most significantly, Plaintiff's complaint alleges delay in processing the application, *only*, and does not allege, for example, an application was rejected because of some aspect related to the investment in this district. Again, Plaintiff's complaint expressly states that the first cause of action "challenges *only* the reasonableness of Defendants' delays or inaction in the completion of his background checks and adjudication of his I-526 petition, *not* the grant or denial of this filing," and the second cause of action "challenges *only* the reasonableness of the delays or inaction in the completion of his background checks and adjudication of his I-526 petition, *not* the grant or denial of this filing." (Compl. ¶¶ 42, 51 (emphasis added).)

Like the language utilized in stating the claims in the complaint, the Court's holding is similarly confined. If the agency's decision had gotten to the point of relying on events or evidence in Merced, such as adjudicating the petition based on the presence or absence of certain investments in Merced or the number of employee, *etc*., the Court could very well rule in favor of Plaintiff, depending on the specific aspects of the denial of the application and arguments presented. For example, the Court does may not necessarily hold entirely in agreement, depending on the precise factual circumstances, with the Kantharia court's statement that its finding that "[t]he operative facts pertinent to Plaintiffs' claims are those surrounding the

adjudication of their Form I-526 petitions—not the investments themselves . . . is true notwithstanding the fact that USCIS rejected the visa applications for reasons relating to Plaintiffs' business ventures in this district." Kantharia, 2023 WL 3444070, at *2; see also Adab, 2015 WL 6249563, at *4 ("The Court agrees with plaintiffs that a 'substantial part of the events or omissions' at issue occurred in this District [as] [c]ourts in immigration-related challenges have found this test satisfied where an office in the relevant district took significant action on the applications in question, even if significant actions were also undertaken elsewhere . . . [m]oreover, the visas were denied at least in part because of a dispute over the number of jobs created in Riverside [and] [t]hese facts suffice to establish proper venue.").

In other words, events, witnesses and information or other factors pertaining to the decision could make it appropriate to establish venue in such circumstances. But here, at this stage of the processing of the application and given the Plaintiff's express and confined allegations contained in the complaint, focused solely on the delay in processing leads the Court to conclude there has not been any event or omission related to the investment in Merced as pertinent to Plaintiff's application and complaint, yet.

Accordingly, the Court finds that Plaintiffs have failed to meet their burden to demonstrate a substantial part of the events or omissions giving rise to their claims occurred in this district. 28 U.S.C. § 1391(e)(1)(B); Kantharia, 2023 WL 3444070, at *3; Vigg, 2022 WL 3581930, at *3; Batra, 2021 WL 4353112, at *3.

**B. The Court Finds Transfer to the District of Columbia is in the Interest of Justice**

If venue could be proper in the Eastern District of California, then under § 1404(a), the Court may transfer the action to any other district or division where it might have been brought "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). However, here, having found venue improper in the Eastern District, § 1406(a) would apply, and the Court may, "in the interest of justice," transfer the action "laying venue in the wrong division or district . . . to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); see Van Dusen v. Barrack, 376 U.S. 612, 634, 84 S. Ct. 805, 818, 11 L. Ed. 2d 945

(1964) ("Although both sections were broadly designed to allow transfer instead of dismissal, § 1406(a) provides for transfer from forums in which venue is wrongly or improperly laid, whereas, in contrast, s 1404(a) operates on the premises that the plaintiff has properly exercised his venue privilege."); Nelson-Devlin v. Eli Lilly & Co., No. 2:14-CV-02811-KJM, 2015 WL 5436700, at *5 (E.D. Cal. Sept. 15, 2015) ("Section 1404(a) generally applies when the transferor court is a proper venue for the action, while § 1406(a) is relied on when venue is not proper in the forum where a plaintiff originally filed suit.").

Therefore, "[h]aving found venue improper, the Court has discretion to dismiss or transfer the case." Kantharia, 2023 WL 3444070, at *3 (citing King v. Russell, 963 F.2d 1301, 1304 (9th Cir. 1992)). The interest of justice usually favors a transfer rather than a dismissal. See, e.g., Kantharia, 2023 WL 3444070, at *3.

"Unlike 1404(a) transfers, no particular factors guide the decision ordering transfer under § 1406." Nelson-Devlin, 2015 WL 5436700, at *5. "The court looks to whether the action could have been brought in the transferee venue, and 'considerations similar to those in the foregoing § 1404(a) interest of justice analysis would apply here as well.' " Id. (quoting Kawamoto v. CB Richard Ellis, Inc., 225 F.Supp.2d 1209, 1214 (D. Haw. 2002)); Delarosa v. State St. Corp., No. CV1700671BROFFMX, 2017 WL 5592912, at *2 (C.D. Cal. June 21, 2017) (same).

In turn, "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' " Stewart Organization, Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622). "A motion to transfer venue under § 1404(a) requires the court to weigh multiple factors in its determination whether transfer is appropriate in a particular case." Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). "[T]he court may consider: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease

1  of access to sources of proof." Id. at 498–99 (also noting "the presence of a forum selection
2  clause is a significant factor" in the § 1404(a) analysis and that "the relevant public policy of the
3  forum state, if any, is at least as significant a factor in the § 1404(a) balancing."); see also
4  Brayton Purcell LLP v. Recordon & Recordon, 361 F. Supp. 2d 1135, 1144 (N.D. Cal. 2005)
5  ("Factors that may be considered include: (1) plaintiff's choice of forum, (2) convenience of the
6  parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of
7  each forum with the applicable law, (6) feasibility of consolidation of other claims, (7) any local
8  interest in the controversy, and (8) the relative court congestion and time of trial in each forum."
9  (quoting Williams v. Bowman, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001))).

10      The Court first finds that the District of Columbia is a "district or division in which [this
11  action] could have been brought." 28 U.S.C. § 1406(a). The Court also concludes that,
12  "[a]ssuming the § 1404(a) factors are relevant even under § 1406, these factors also support
13  transfer." Nelson-Devlin, 2015 WL 5436700, at *7. As whether transfer is in the interest of
14  justice is generally analyzed under similar factors as those used in a § 1404(a) analysis, the Court
15  finds a majority of the § 1404(a) convenience factors appear to weigh heavily in favor of
16  transfer: a majority of the witnesses would be in the District of Columbia; the District of
17  Columbia will be a significantly more convenient and less expensive forum for Defendants,
18  Plaintiff has not established how this district, or another, would be a more convenient or less
19  expensive forum for them; Plaintiff has not established that any of the events giving rise to the
20  current claim (focusing "only" on delay in processing the petition) have a connection to the
21  Eastern District; and, it would be easier to compel relevant witness attendance and access
22  evidence in the District of Columbia. See Adab, 2015 WL 6249563, at *7 ("This factor favors
23  transfer because agency adjudicators and officials that might be relevant witnesses are located in
24  or near the District of Columbia . . . as the defendants are federal agencies and officials based in
25  DC, and no plaintiff resides in the United States, the convenience of the parties weighs in favor
26  of transfer as well [and] . . . the convenience of counsel is not a factor to be considered in
27  weighing a transfer of venue.") (internal quotation marks and citation omitted); see also Saleh v.
28  Titan Corp., 361 F. Supp. 2d 1152, 1157 (S.D. Cal. 2005) ("[N]umerous courts have given less

deference to the plaintiff's choice of forum where the action has little connection with the chosen forum."); Exact Identification Corp. v. Feldman Sherb & Co., P.C., No. CIVS0502116FCDPAN, 2006 WL 236921, at *2 (E.D. Cal. Jan. 31, 2006) ("[W]hile courts generally afford considerable weight to plaintiff's choice of forums, the deference is considerably less where plaintiff does not reside in the forum where the action was commenced." (citing Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir. 1987))).  While the Court agrees with Plaintiff that the Eastern District could have a local interest in the investments, this does not weigh heavily based on the current allegations of delay and lack of event or omission occurring in this district pertaining to such allegations.

1.  Plaintiff's FOIA Request Concerning Remote Workers and Plaintiff's Argument Concerning the USCIS Headquarter Location

For the above explained reasons, the Court concluded that under 28 U.S.C. § 1391(e)(1)(B) and 28 U.S.C. § 1406(a), venue is inappropriate in the Eastern District, the District of Columbia is a district that this action could have been brought, and that the interest of justice weighs in favor of transferring the action to the District of Columbia.  The Court turns to specifically address two of Plaintiff's arguments concerning whether the District of Columbia is an appropriate venue: (1) that the USCIS headquarters is now located in Maryland; and (2) that remote workers adjudicating the petition may not be located in Washington D.C.  These two lines of argument do not change the Court's analysis or conclusions.

First, Plaintiff argues it is unclear if Maryland is an appropriate venue.  (See Opp'n 4 ("Although, as noted below, Defendant USCIS is actually located in Camp Springs, Maryland, and its subordinate IIPO Office is located in Washington, DC, begging the question as to which jurisdiction (DC or Maryland) has an interest in the orderly processing of USCIS applications.").)  The Court agrees with Defendants that this case is centered entirely on the IPO in the District of Columbia and that office's alleged delay in adjudicating Plaintiff's petition, and that the District of Maryland is not a proper venue as none of Plaintiff's claims touch on actions or omissions that occurred within Maryland.  See Chakrabarti v. United States Citizenship & Immigr. Servs., No. CV 21-1945 PJM, 2021 WL 4458899, at *6 (D. Md. Sept. 29, 2021) ("Plaintiffs' assertion that venue is appropriate in Maryland because USCIS's headquarters lie in

Maryland finds scant support in the case law."); Dhimar v. Blinken, No. CV 22-2175-PJM, 2022 WL 17540972, at *2 (D. Md. Dec. 8, 2022) ("The sole connection of Dhimar's case to this State is the fact that USCIS is headquartered here.  However, as the Court has held before, that fact alone is insufficient to establish proper venue in Maryland."); Canal A Media Holding, LLC v. United States Citizenship & Immigr. Servs., No. CV 17-6491 FMO (JCX), 2018 WL 7297829, at *4 (C.D. Cal. Sept. 30, 2018) ("Here, plaintiffs are not residents of the district where the USCIS office is located.").

Second, Plaintiff frames Defendant Emmel's declaration as carefully stating that IPO decisions are issued from Washington, D.C., but it does not mention if IPO adjudicators are permitted to work remotely from outside of Washington, D.C.  (See Emmel Decl. ¶ 8 ("These employees include Form I-526 adjudicators and managers, Records staff for Form I-526 petition files, and customer service staff who respond to Form I-526 inquiries via the IPO customer service mailbox, all of whom are based in Washington, DC.").)  Plaintiff argues nothing in the declaration states that these employees actually perform their duties in Washington, D.C., and Plaintiff attaches advertisements wherein USCIS is actively recruiting new adjudicators and program managers for its operations, advertising some of these jobs as "remote."  Relatedly, Plaintiff's counsel submitted a FOIA request to Defendant USCIS on February 24, 2023, several months before the current deadline to oppose Defendants' Motion.  Plaintiff argues that without USCIS's response to this pending FOIA request, or without limited discovery, Plaintiff is unable to fully brief his argument that the USCIS IPO adjudicator that is reviewing his I-526 petition is actually doing so from a home office located in Maryland, Pennsylvania, Delaware, New Jersey, Virginia, or even West Virginia.  As such, Plaintiff asks that this Court either deny or defer granting Defendants' Motion until such time as Plaintiff can submit a supplemental brief based on the agency's FOIA production, or after this Court has permitted limited discovery.

Plaintiff's pending FOIA request and request for discovery do not change the Court's conclusion that the District of Columbia is a proper venue.  First, Defendants respond that Plaintiff's petition is not yet assigned to an adjudicating officer and is currently in the IPO's queue.  Therefore, Defendant submits that at this stage, irrespective of a FOIA request or

1  discovery, it is not possible for Plaintiff to identify who the adjudicator of his petition will be,
2  much less identify precisely where he or she could potentially be teleworking from.  Defendants
3  argue that based on this proffer, and because it is Plaintiff's burden to demonstrate proper venue,
4  Plaintiff cannot satisfy this burden by speculating about the future assignment of his petition to
5  an unknown adjudicator who may or may not be teleworking.

6  The significance of Defendants' citations proffered in support of their statement that the
7  petition is not yet assigned to an adjudicating officer, is not absolutely clear to the Court.
8  Specifically, Defendants appear to provide a number of links to general information contained in
9  the USCIS website and a news release concerning the procedure and timing of processing EB-5
10 petitions.  (See Reply 3 n.2.)  It appears Defendants suggest that collectively the new processing
11 guidelines show that Plaintiff would not have an adjudicator assigned yet, as: "[o]n January 29,
12 2020, USCIS announced that it was modifying the case-assignment process for I-526 Petitions to
13 give 'priority to petitions where visas are immediately available, or soon available' "; "[p]er this
14 modification, pending I-526 Petitions are no longer processed using only a 'first-in, first-out'
15 based approach"; "[r]ather, USCIS prioritizes I-526 Petitions for investors with EB-5 immigrant
16 visas available or soon to be available"; "USCIS determines whether a visa is available or soon
17 to be available to a given petitioner by comparing the petitioner's country of birth (which is
18 listed on the I-526 Petition) with the Department of State's Monthly Visa Bulletin indicting the
19 availability of visas by country"; that "[f]or I-526 Petitions with a visa available or soon to be
20 available, USCIS also factors in whether the underlying investment project has been reviewed";
21 and "[w]orkflows are generally managed in a first-in, first-out order when a visa is available or
22 will be available soon."  (Reply 3 n.2 (citations omitted).)  While the proffered support for the
23 procedure as directly related to Plaintiff's petition is not absolutely clear, the Court finds that the
24 procedure for processing, the allegations in Plaintiff's complaint alleging delay in adjudication,
25 Defendant Emmel's declaration that [t]his petition has remained pending at IPO in Washington,
26 DC since that time," (Emmel Decl. ¶ 5), and consideration of the Plaintiff's burden to establish
27 proper venue in the Eastern District, weigh in favor of rejecting Plaintiff's request for discovery
28 or stay pending the FOIA request, and support transferring this case to the District of Columbia

at this juncture.

Significantly, it is Plaintiff's burden to demonstrate venue is proper in the Eastern District of California, Piedmont, 598 F.2d at 496, and even if Plaintiff could show that some part of the IPO's adjudication occurred in a second district somewhere in the general vicinity of Washington D.C., that simply is not relevant to the issue at hand—*i.e.*, whether there are sufficient ties here in the Eastern District of California to avoid a venue transfer elsewhere or outright dismissal. In this regard, Plaintiff does not appear to directly argue that the remote worker could be adjudicating Plaintiff's petition from the Eastern District of California, but rather argues it is unclear because of the potential remote worker and the location of the USCIS headquarters in Maryland, whether the District of Columbia is proper, in light of the clear *investment* connection to the Eastern District. (See Opp'n 4-7 ("It is beyond argument that Plaintiff could not have filed his EB-5 I-526 petition with USCIS without first making a qualifying investment through the EB-5 program . . . [but] [w]ithout Defendant USCIS's response to this pending FOIA request, or without limited discovery, Plaintiff is unable to fully brief his argument that the USCIS IIPO adjudicator that is reviewing his I-526 petition is actually doing so from a home office located in Maryland, Pennsylvania, Delaware, New Jersey, Virginia, or even West Virginia.").

Therefore, ultimately, the Court finds in agreement with Defendants that Plaintiff's speculation about the precise location of USCIS adjudicators is not directly relevant to Defendants' motion, as it does nothing to address whether venue is proper here in the Eastern District of California, at least based on this precise complaint and petition.[3] For these reasons, the Court denies Plaintiff's request to further explore this issue through either discovery or deferring ruling on Defendants' motion pending a FOIA response.

Thus, for all of the above reasons, the Court finds transfer to the District of Columbia is proper and in the interest of justice. See Anukwu v. Jaddou, No. CV DKC 23-713, 2023 WL

---

[3] Like the Court's statement above that the location of the investment could be relevant to the venue analysis depending on the precise facts, the Court notes that given the increasing number of remote workers in both government and non-governmental positions, the Court does not foreclose that the location of a remote adjudicator could be a factor in a venue analysis, depending on the location of the adjudicator, the precise allegations in relation to the stage of the decision on the petition at issue, and the reasoning behind the petition decision.

3979310, at *2 (D. Md. June 13, 2023) ("Plaintiff's petition is being processed by the IPO service center in the District of Columbia and all the documents supporting the petition, including administrative record, are located there[,] [a]ny challenge to the decision on Plaintiff's petition would also be made with the service center that the processed the application – i.e., the IPO in the District of Columbia . . . [and] Maryland has no connection with this matter other than containing USCIS' headquarters.").

## V.

## ORDER

For the above explained reasons, IT IS HEREBY ORDERED that:

1. Defendants' motion to transfer venue under 28 U.S.C. § 1406(a) is GRANTED;
2. Defendants' motion to dismiss under Federal Rules of Civil Procedure 12(b)(3) is DENIED;
3. This case is TRANSFERRED to the United States District Court for the District of Columbia;
4. Defendant's alternative motion to transfer the case under 28 U.S.C. § 1404(a) is DENIED as moot; and
5. The hearing set for June 28, 2023, at 10:00 a.m. in Courtroom 9 is HEREBY VACATED.

IT IS SO ORDERED.

Dated: **June 26, 2023**

UNITED STATES MAGISTRATE JUDGE